COURT OF APPEALS












 
 
 
  
 
 
 




 

 

 

 

 

 

COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

 

 




 
 
  
 SAFETY ANCHOR
 PRODUCTS, INC. AND ED REID, INDIVIDUALLY,
  
                             Appellants,
  
 v.
  
 CAROLYN PAUREE,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00341-CV
  
 Appeal from the
  
 109th Judicial District
  
 of Andrews County, Texas
  
 (TC# 14,888)
 
 




 

 

M E M O R A N D U M  O P I N I O N

This is an appeal from a judgment in
favor of Appellee, Carolyn Pauree,
for breach of contract and fraud against Appellants, Safety Anchor Products,
Inc. and Ed Reid, Individually.  For the
reasons stated, we affirm the judgment of the trial court.

I.  SUMMARY OF THE EVIDENCE








In November, 1995, Appellee, Carolyn Pauree (APauree@), and Appellants, Ed Reid (AReid@) and Safety Anchor Products, Inc. (AAnchor@), entered into a written commission
agreement (AAgreement@). 
The Agreement required Appellants to pay Pauree
a commission consisting of ten percent (10%) of Anchor=s total sales to former customers of
TUBECO Steel and Manufacturing, Inc. (ATUBECO@)[1]
for a period of twenty-four (24) months beginning with sales for the month of
October, 1995.  Pauree
agreed not to compete against Anchor and agreed to contact all former TUBECO
customers informing them of the acquisition by Anchor. 

TUBECO later filed for
bankruptcy.  Under TUBECO=s bankruptcy, a settlement was
reached between the bankruptcy trustee and Anchor with regard to certain
promissory notes.  Pauree
did not receive notice concerning the agreement by the trustee and Anchor.  Pauree subsequently
filed for Chapter 11 bankruptcy, but she did not enter into any settlement
agreements, nor did the Bankruptcy Court sell the Agreement to any
individual.  Because she successfully
completed her bankruptcy plan, she believed the Agreement, and commission
payments due, were her property. 








Appellants thereafter failed and
refused to timely forward the monthly accounting statements to Pauree.  Appellants
also failed to forward the commission payments due for the period of March 1,
1997, through September 5, 1997.  After a
formal demand was made, Appellants forwarded a commission report on June 12,
1998, that showed commission due to Pauree in the
amount of $9,129.25.  Pauree
subsequently brought suit against Anchor and Reid for breach of contract,
fraud, and attorney=s fees, claiming underpayment of commissions pursuant to the
Agreement.  The trial court ordered the
disclosure of Anchor=s invoices from March through September of 1997, and it found
that Appellants owed Pauree $68,010.87 in
commissions.  Appellants thereafter paid Pauree $36,567.13. 
After a bench trial, the court awarded $31,443.74 for breach of
contract, $24,000 for fraud, $14, 574 for attorney=s fees, and $8,304.40 in prejudgment
interest.  This appeal follows.  

II.  DISCUSSION

Appellants bring one issue
challenging the trial court=s conclusion of law that they committed fraud.  We review a trial court=s conclusions of law de novo. Austin
Hardwoods, Inc. v. Vanden Berghe,
917 S.W.2d 320, 322 (Tex. App.--El Paso 1995, writ denied).

Appellants contend that the record
fails to reflect that Pauree was induced into
entering into the Agreement.  Appellants
argue that, because the alleged fraud against Pauree
consisted of misrepresented commission statements made after the Agreement was
executed, no tort could occur as a matter of law.  We disagree.         

Tort damages are recoverable in fraudulent
inducement claims irrespective of whether the fraudulent representations are
subsequently subsumed in a contract or whether the plaintiff only suffers an
economic loss related to the subject matter of the contract.  Formosa Plastics Corp. v. Presidio Eng=rs & Contractors, Inc. 960 S.W.2d 41, 47 (Tex. 1998).  To allow the recovery of fraud damages
sounding in tort only when a plaintiff suffers an injury that is distinct from
the economic losses recoverable under a breach of contract claim is
inconsistent with this well-established law and also ignores the fact that an
independent legal duty, separate from the existence of the contract itself,
precludes the use of fraud to induce a binding agreement.  Id. 
If a plaintiff presents legally sufficient evidence on each of the
elements of a claim for fraudulent inducement, any damages suffered as a result
of the fraud sound in tort.  Id.








To recover in a cause of action for
fraud, it requires Aa material misrepresentation, which was false, and was either
known to be false when made or was asserted without knowledge of its truth,
which was intended to be acted upon, which was relied upon, and which caused
injury.@ 
Sears Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex.
1994); Rubalcaba v. Pacific/Atlantic Crop
Exchange, Inc. 952 S.W.2d 552, 555 (Tex. App.--El Paso 1997, no pet.); see
also DeSantis v. Wackenhut
Corp., 793 S.W.2d 670, 688 (Tex. 1990), cert. denied, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991).  Material is defined as an important matter to
the defrauded party in making a decision. 
AMaterial means a reasonable person
would attach importance to and would be induced to act on the information in
determining his choice of actions in the transaction in question.@ American Medical Inter., Inc. v. Giurintano, 821 S.W.2d 331, 338 (Tex. App.--Houston
[14th Dist.] 1991, no writ).  A promise
of future performance constitutes a claim of misrepresentation if the promise
was made with no intention of performing at the time it was made.  Schindler v. Austwell
Farmers Co-op., 841 S.W.2d 853, 854 (Tex. 1992).  However, the mere failure to perform a
contract is not evidence of fraud.  Id.  In the case at bar, Pauree
was required to present evidence that Appellants made representations with the
intent to deceive her during their contractual negotiations, with no intention
of later performing.  See Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434
(Tex. 1986); see also T.O. Stanley Boot Co., Inc. v. Bank of El Paso,
847 S.W.2d 218, 222 (Tex. 1992). 
Moreover, the evidence presented by Pauree
must be relevant to Appellants= intent at the time the representation was made.  Spoljaric,
708 S.W.2d at 434.

The evidence shows that Appellants
made a material misrepresentation by claiming that they intended to pay a 10
percent commission on sales to all former TUBECO customers for the stated
twenty-four month period.  Reid testified
he never intended to pay Pauree commission on former
TUBECO customers that he already had as customers.  He testified as follows:

Q:  Now, you
knew that you were suppose [sic] to pay a ten percent commission on all sales
to the listed customers for a period of time, did you know that?

 

A:  Well, some
of these are already my customers.

 

Q:  That=s not my question, sir.  The question is, you knew, when you signed
this agreement, that you were suppose [sic] to pay a ten percent commission on
all sales to the listed customers for the period in time set forth in the
agreement, didn=t you?

 

A:  All of her
customers, yeah. 

 

Q:  And that=s the list that=s
attached to Plaintiff=s Exhibit #1, right?

 

A:  Well, there
are some on here that I already had.

 

Q:  Do you agree
with me sir, that the document says that theBthat you=re going to pay ten percent commission on sales to
former TUBECO Steel & Manufacturing customers as indicated on the attached
list?

 

A:  I don=t think this list was attached.

 

Q:  That=s what the agreement says though, isn=t it, sir?

 

A: 
Well, she knew I wasn=t going to pay her on some because I=d already had.








Q:  I=m sorry sir, but perhaps my question wasn=t clear.  I=m asking you, does the agreement say that you=re going to pay ten percent of total sales to former
TUBECO customers as indicated on the attached list?  Isn=t that what the agreement says--

 

A:  Yes, that=s what it says.

 

Q:  And that=s what you agreed too? 

 

A:  Uh-huh.  

 

Moreover, the
evidence established that Appellants failed to forward monthly accounting
statements to Pauree and failed to pay the
commissions owed in contravention of the Agreement.  Pauree testified
that after inspection of all the invoices and commission reports, she
determined that Appellants had understated the commission actually earned.  Appellants= report showed that Pauree was owed $9,129.25. 
After comparing the full invoices to the commission reports, Pauree was actually owed over $23,000.  After reviewing the evidence, we hold that
the trial court did not err in finding that Appellants committed fraud and in
awarding damages.  Issue No. One is
overruled and the judgment of the trial court is affirmed.

Having
overruled Appellants= sole issue on review, we affirm the judgment of the trial
court.

January 23, 2003

 

                 
                                                                                                                              RICHARD
BARAJAS, Chief Justice

 

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

 








 


 

 

 











[1]  Pauree formerly owned and was an employee of TUBECO.